```
                    BEFORE THE UNITED STATES JUDICIAL
                    PANEL ON MULTIDISTRICT LITIGATION


 In re GENERAL MOTORS LLC         .   MDL NO. 2987
 CHEVROLET BOLT EV BATTERY        .   Thursday, March 25, 2021
 PRODUCTS LIABILITY LITIGATION    .   11:35 a.m.
 . . . . . . . . . . . . . . .    .


                      TRANSCRIPT OF ORAL ARGUMENT
                        VIA VIDEO TELECONFERENCE



  BEFORE:             HONORABLE KAREN K. CALDWELL, CHAIR
                      Eastern District of Kentucky

                      HONORABLE NATHANIEL M. GORTON
                      District of Massachusetts

                      HONORABLE MATTHEW F. KENNELLY
                      Northern District of Illinois

                      HONORABLE DAVID C. NORTON
                      District of South Carolina

                      HONORABLE ROGER T. BENITEZ
                      Southern District of California

                      HONORABLE DALE A. KIMBALL
                      District of Utah


  APPEARANCES:

 For Plaintiffs:      BEENA M. MCDONALD, ESQ.
                      Chimicles Schwartz Kriner
                      & Donaldson-Smith LLP
                      361 West Lancaster Avenue
                      One Haverford Centre
                      Haverford, PA 19041
                      (610) 642-8500

                      RYAN MCDEVITT, ESQ.
                      Keller Rohrback LLP
                      1201 Third Avenue
                      Suite 3200
                      Seattle, WA 98108
                      (202) 623-1900
```

```
For Plaintiffs:        E. POWELL MILLER, ESQ.
                       The Miller Law Firm, PC
                       950 W. University Drive
                       Suite 300
                       Rochester, MI 48307
                       (248) 843-0843

For Defendant:         JOHN NADOLENCO, ESQ.
                       Mayer Brown LLP
                       350 South Grand Avenue
                       25th Floor
                       Los Angeles, CA 90071
                       (213) 229-9500

Court Reporter:        Bryan A. Wayne, RPR, CRR
                       U.S. Courthouse, Room 4704-A
                       333 Constitution Avenue NW
                       Washington, DC 20001
                       (202) 354-3186
                       Bryan_Wayne@dcd.uscourts.gov
```

Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.

```
 1                         P R O C E E D I N G S
 2              JUDGE CALDWELL:  The Panel will now hear MDL No. 2987,
 3   the General Motors Chevrolet Bolt Battery Products Liability
 4   Litigation.  First up, we have Beena McDonald for Plaintiffs.
 5              MS. MCDONALD:  Good morning, Your Honors.
 6        My name is Beena McDonald from the law firm of Chimicles
 7   Schwartz Kriner & Donaldson-Smith on behalf of the movants,
 8   who are requesting centralization in the Eastern District of
 9   Michigan or, in the alternative, in the Northern District of
10   Illinois.
11        Your Honors, first I believe that 1407 transfer meets all
12   the requirements necessary here.  All the parties agree that
13   the cases pose overlapping class definitions and common factual
14   allegations.  All the parties also agree, except for the Pankow
15   Plaintiffs in California, that the Eastern District of Michigan
16   is the first choice of forum that will serve towards convenient
17   and efficient proceedings.
18        Second, 1404 transfer venue is not the most appropriate
19   resolution.  It just does not allow for a reasonable prospect
20   that it will eliminate the multidistrict character of this
21   litigation.
22        First, the 1404 motion in California in the Pankow case
23   is stayed pending resolution of this MDL motion.  In our Torres
24   case in the Northern District of Illinois, Judge Chang has said
25   that he would like a status update in early April, and its
```

1    pending the resolution of this motion.  And in the most recent
2    tagalong case, which has been filed in the Western District of
3    Texas, no 1404 motion has been filed at all.
4         So where are we left?  We're left with eight actions now
5    pending in four jurisdictions with 11 different plaintiffs'
6    counsel, 23 different plaintiffs, and eight different states.
7    And we believe that there's every likelihood that the floodgates
8    are going to open with more tagalong cases being filed when
9    GM comes out with this purported fix to the problems of their
10   electric vehicle batteries, and we've been contacted by counsel
11   who've told us that they intend to file, new counsel that are
12   not in this case, that are not in any of these cases thus far.
13        Therefore, we believe that 1407 or transfer is the only
14   way to ensure that all cases, now and forthcoming, will be
15   automatically consolidated and coordinated.  Thank you.
16             JUDGE CALDWELL:  Thank you, Ms. McDonald.
17        Judge Gorton.
18             JUDGE GORTON:  Again, Ms. McDonald, you seem to be
19   the outlier because all of the other plaintiffs and General
20   Motors oppose centralization and think that 1404 is the right
21   way to go.  What do you know that they don't?
22             MS. MCDONALD:  Your Honor, we moved under 1407
23   because, as I mentioned, this case is about all of the potential
24   cases that are forthcoming.  We filed this MDL motion two months
25   ago.  Within those two months, there have been three new related

1  actions.  This is a case against one of the big three auto
2  manufacturers in this country, as the Panel is well aware,
3  and we believe that there are only more cases that are going
4  to be forthcoming based upon communication with us, as well
5  as the fact that GM continues to issue press releases about
6  its purported fixes, and there's an ongoing injury to hundreds
7  and thousands of potential class members in this action.
8       So, therefore, an order to consolidate now all of the cases
9  that exist and the potential cases that will exist, put them on
10 the same track in one court and one action; we believe that 1407
11 is the proper vehicle for that, Your Honor.
12           JUDGE CALDWELL:  Judge Kimball.
13           JUDGE KIMBALL:  There was a recall.  Is that correct?
14           MS. MCDONALD:  Yes, Your Honor.
15           JUDGE KIMBALL:  Does that affect whether or not in
16 your view these cases should be MDL cases?
17           MS. MCDONALD:  Your Honor, it doesn't, because it
18 wasn't a permanent -- it wasn't anything that was permanent.
19 The recall, in our understanding, by GM is basically culling
20 these vehicles to enable a supposed safety measure, but there
21 has been no permanent fix.  GM has said that they will supposedly
22 issue a permanent fix and that there will be another potential
23 recall.
24      So I think it actually -- the fact that these issues are
25 becoming more complex in an already complex case on this new

1  technology, this new electric vehicle battery technology,
2  I think that actually is more of a reason, Your Honor, to
3  consolidate or coordinate these cases under 1407.
4              JUDGE GORTON:  Thank you.
5              JUDGE CALDWELL:  Judge Kennelly.
6              JUDGE KENNELLY:  So, based on the communications
7  you referred to from counsel who are maybe intending to file
8  additional cases, what's your sense of the ballpark number of
9  cases we're talking about?  Is it closer to two; is it closer
10 to 20; is it closer to 200, or what?
11             MS. MCDONALD:  I'm not aware of 200 potential cases
12 that are going to be filed, in all honesty.  But there have been
13 multiple counsel from across the country that have reached out
14 to find out the status of the MDL and the parties' positions as
15 far as we know.  So we do know multiple counsel that intend on
16 filing, Your Honor.
17             JUDGE KENNELLY:  Is "multiple" closer to two, or is
18 it closer to ten?
19             MS. MCDONALD:  I think it's closer to between five
20 and ten.
21             JUDGE KENNELLY:  Okay.  Thanks.
22             JUDGE CALDWELL:  Any other questions?
23        Thank you very much, Ms. McDonald.  You have reserved
24 one minute for rebuttal.
25        The Panel will now recognize Ryan McDevitt.

1           Mr. McDevitt, please make your appearance.
2               MR. MCDEVITT:  Good morning.  I'm Ryan McDevitt
3    from the law firm of Keller Rohrback.  I'm here on behalf of
4    the plaintiffs in the Altobelli action pending in the Eastern
5    District of Michigan.  I also represent the plaintiff in the
6    Walker action in the same district.  We oppose the MDL petition
7    or, in the alternative, support centralization in the Eastern
8    District of Michigan.
9         The reason for that position is that there are eight
10   related actions, and every party to every case agrees that
11   they all belong in the Eastern District of Michigan.  The only
12   question today is whether this should be accomplished via the
13   MDL process or via 1404 transfer.
14        Now, as the Panel well knows, 1404 transfer is strongly
15   preferred to the MDL process when it can be effected, and here
16   there's no real obstacle to 1404 transfer in the three cases
17   where it hasn't happened already.  Five of the eight cases are
18   already pending in the Eastern District of Michigan.  Three were
19   originally filed there.  Two were transferred there from other
20   districts by stipulation.
21        The other three, the Pankow Plaintiffs in the Central
22   District of California, agree with us that an MDL should
23   be unnecessary here, and I'm told that they no longer oppose
24   transfer to the Eastern District of Michigan.  A 1404 motion
25   is pending in that litigation.

1     As Ms. McDonald said, it's stayed pending this Panel's
2 ruling, but, presumably, if the Panel denies the petition,
3 the Pankow Plaintiffs can simply withdraw their opposition
4 to the 1404 motion and in effect transfer that way.
5     Similarly, the Torres Plaintiffs, the movants here,
6 their case is pending in the Northern District of Illinois.
7 They seek transfer via the MDL process to the Eastern District
8 of Michigan, and there's a 1404 motion pending in that case as
9 well.  So to effect transfer to their preferred district via
10 the preferred method, all they have to do is withdraw their
11 opposition to the pending motion in that case.
12     And lastly, I spoke yesterday with counsel in the Kelsch
13 case in Texas, the last of the eight, who also supports an MDL
14 in the Eastern District of Michigan.  Now, that case hasn't been
15 on file long, and I predict -- and GM's counsel can answer more
16 definitively -- that GM will file a 1404 motion in that case.
17     In short, there just shouldn't be any need for the Panel
18 to create an MDL.  But if the Panel is inclined to do so, we
19 support consolidation in the Eastern District of Michigan.
20 Thank you.
21          JUDGE CALDWELL:  Thank you very much, Mr. McDevitt.
22 Questions from the Panel?  Yes, Judge Kennelly.
23          JUDGE KENNELLY:  So what happens, then, if we don't
24 centralize the cases, and then the plaintiff in either the
25 Illinois or the California case opposes the 1404 motion and

1    the judge in that case denies it?  Then what do you do?
2                MR. MCDEVITT:  Well, as I said, I believe -- and
3    they may be here to argue, but I believe that the California
4    plaintiffs won't oppose it.
5                JUDGE KENNELLY:  Okay.
6                MR. MCDEVITT:  I think their position has changed.
7    Obviously, that still requires the judge to grant it.  It
8    does sound like as far as plaintiffs in Illinois will oppose it,
9    although I'm sort of confused as to why since they've asked to
10   go to the Eastern District of Michigan.  GM's inclined to let
11   them.  I think there's a pretty reasonable prospect that in
12   that case and any future case where there's a 1404 motion, the
13   judge would be inclined to transfer the case, because I think
14   the Eastern District of Michigan is pretty clearly the center
15   of gravity in their case alleging conduct by General Motors.
16               JUDGE KENNELLY:  Thanks.
17               JUDGE CALDWELL:  Judge Gorton.
18               JUDGE GORTON:  Is informal coordination a possibility
19   if one or more of the 1404 motions is denied?
20               MR. MCDEVITT:  I would think so.  We've been able
21   to reach out to all of plaintiffs' counsel so far.  Obviously,
22   not everyone agrees on the ideal method by which the cases
23   should be transferred, but as I said, to my knowledge the one
24   real outlier is the movants here, who asked to go to Eastern
25   District of Michigan.  I would encourage them to accept GM's

1  offer to do so.
2              JUDGE CALDWELL:  Other questions?  Hearing none,
3  we'll proceed to the next argument.
4       Thank you very much, Mr. McDevitt.
5              MR. MCDEVITT:  Thank you.
6              JUDGE CALDWELL:  The Panel will now recognize
7  Powell Miller.  Please make your appearance.
8              MR. MILLER:  Good morning.  Powell Miller.  I am
9  from The Miller Law Firm based in Michigan, and I represent
10 Casper Rankin.  We oppose centralization; but in the event that
11 the Panel decides to centralize, we support centralization in
12 the Eastern District of Michigan.
13      I agree with Mr. McDevitt's argument, and I'm not going
14 to repeat his point, but I can absolutely confirm that in the
15 Pankow case, which is in the Central District of California,
16 I personally spoke to Mr. McCune yesterday, and he said that
17 they will withdraw their opposition to the 1404(a) motion to
18 transfer and agreed to transfer to the Eastern District of
19 Michigan.
20      I'd like to offer just a few insights into the Eastern
21 District of Michigan.  I was born and raised in Detroit.  I
22 have prosecuted more than 200 cases in the Eastern District
23 of Michigan.  I started out in my dad's law firm as a messenger,
24 so I can say that the walk from the Renaissance Center, which
25 is General Motors' world headquarters, is about a mile from

1  the courthouse.  I delivered packages as a kid between the
2  Renaissance Center and the Eastern District of Michigan.
3  So you couldn't have a court closer to the world headquarters
4  of General Motors than Detroit.
5      I would also add that the presiding judge, Judge Berg,
6  is an outstanding jurist.  He is one of the most thoughtful
7  judges I have ever practiced before, and he's absolutely fair
8  and impartial to everybody.  He's experienced in complex
9  litigation, including automotive class actions, and I think
10 he would be an excellent choice for this case.
11     And last but not least, when we get past this COVID
12 nightmare, I hope we could have a live MDL Panel in Michigan
13 in the fall.  It is gorgeous in Michigan in the fall.
14 Thank you very much.
15          JUDGE CALDWELL:  Thank you very much.
16     Questions for counsel?  Hearing none, we'll turn to General
17 Motors.  Please state your appearance.
18          MR. NADOLENCO:  Good morning, Your Honors.
19 John Nadolenco of Mayer Brown on behalf of Defendant General
20 Motors, and we oppose the motion.
21     Section 1407 centralization is a last solution that
22 should be used only after other options don't work.  Indeed,
23 transferring consolidation by stipulation or motion under
24 § 1404 are preferable because they can effect transfer for
25 all purposes, not just pretrial ones.

1            Here, the Panel should deny the motion without prejudice,
2       because § 1407 centralization is simply not necessary.  There
3       are only a total of eight cases, and the pace of filing has
4       slowed.  Five of the eight either were filed in Michigan or
5       transferred there by stipulation.  The Texas case was just
6       served, and the parties are already discussing transfer; and,
7       if needed, we absolutely will file a § 1404 motion.
8            Plaintiffs' counsel in another, in Pankow, just yesterday
9       indeed decided that they would stipulate to transfer their case
10      from California to Michigan if this case denies the motion
11      before it.
12           That leaves the Torres case, the moving parties here, as
13      the true outlier.  In their home court, those plaintiffs oppose
14      GM's motion for transfer to Michigan, yet they advocate for MDL
15      in that very same jurisdiction.
16           We hope that inconsistency will prompt our home court to
17      grant our transfer motion, but even if that court ultimately
18      chooses not to transfer their case, there are still other tools
19      to avoid duplicative litigation, like requests to stay any
20      non-transferred cases including Ms. McDonald's guess as to
21      what might happen in the future.
22           Only if GM is forced to litigate in multiple jurisdictions
23      would § 1407 centralization make sense, and we are not close to
24      that yet.  Thus, we ask the Panel to deny the motion without
25      prejudice, to it being renewed if circumstances warrant.

1        Thank you, Your Honors.
2                JUDGE CALDWELL:  Thank you.
3        Questions from the Panel?  Judge Norton.
4                JUDGE NORTON:  Do you agree with Ms. McDonald's
5   observation that the blood's in the water and there's going to
6   be a lot more of these cases coming from all over the country?
7                MR. NADOLENCO:  We do not, Your Honor, primarily
8   because Ms. McDonald has been making that claim to us since
9   the cases started being filed; and there's a total of eight,
10  and the pace has slowed.
11               JUDGE NORTON:  The second thing is, is LG a defendant
12  in any of these cases, or is there a third-party action
13  contemplated against LG also?
14               MR. NADOLENCO:  They are not a defendant, and at
15  this point GM is the only defendant in the case.  At this point
16  there's no contemplation, although that is still something under
17  consideration.
18               JUDGE NORTON:  Thank you.
19               JUDGE CALDWELL:  Other questions?
20       Hearing none, we thank you for your argument.
21       We'll turn to Ms. McDonald for her minute of reserved
22  argument.
23               MS. MCDONALD:  Thank you, Your Honors.
24       What all counsel who are opposed to this motion fail to
25  state is the obstacles with regard to 1404.  As this Panel

1  has ruled in *In re Natrol*, 1404 transfer motions alone are not
2  dispositive of the difficulties posed in coordination between
3  the parties.  It's the complexity of the factual issues that are
4  necessary to consider; it's the potential of tagalong actions;
5  it's the underlying ability for, of course, counsel to work
6  together.
7       Now, different counsel have touched on that.  We have
8  reached out to counsel in this case, to all of them, about
9  proceeding with coordinated discovery just as of last week,
10 and those communications will be ongoing.
11      We have spoken to the most recently filed plaintiffs'
12 counsel in the Western District of Texas, and what we're
13 overlooking here is, as Mr. McDevitt said, that counsel supports
14 MDL.  So we are not the outlier.  That is the most recently
15 filed action, and that counsel supports the MDL proceeding.
16 And we believe that that is what is going to continue to happen
17 as we have seen with three new cases filed within the last two
18 months.  That is what's going to continue to happen --
19           JUDGE CALDWELL:  Thank you, Ms. McDonald.  Your time
20 is up.  Questions?  Judge Kennelly.
21           JUDGE KENNELLY:  So the cases that are already in
22 Michigan, it's pretty obvious that those will all end up getting
23 consolidated in front of a single judge if there's no 1407
24 centralization.  The question, I guess, that's been posed by
25 some of the other lawyers that I'm asking you is, why don't you

1     just agree to the 1404(a) motion so that you're there with
2     everybody else?  What's the difference between the two?
3                 MS. MCDONALD:  The difference --
4                 JUDGE KENNELLY:  Not for everybody else.  For you.
5                 MS. MCDONALD:  Sure.  The difference is that, for our
6     plaintiffs, we would like ultimately the ability to go back to
7     our home court in the district within which we filed, which is
8     a consideratione.
9                 JUDGE KENNELLY:  So it's a *Lexecon* issue, basically.
10                MS. MCDONALD:  That's one consideration, Your Honor,
11    and also the fact that we do not want to see -- of course, there
12    has to be a two-step process.  We all have to agree, or the case
13    has to be transferred under 1404.  And this is ongoing.  It's
14    going to happen.  It's certainly going to happen in the Western
15    District of Texas case.
16       And so there's going to be different postures in different
17    cases proceeding along different timelines, and this is, as I'm
18    sure Your Honors can imagine, is a big case where there will
19    certainly be a lot of discovery, and we'd like to coordinate or
20    consolidate that along one timeline.
21                JUDGE KENNELLY:  So what you just said is true with
22    the 1407, too, because you have tagalong cases.  I mean, 1407
23    doesn't guarantee that every case gets filed at the same time.
24    They're going to get filed as they get filed.
25                MS. MCDONALD:  Understood, Your Honor.  But they will

```
 1    automatically come into our case under --
 2              JUDGE KENNELLY:  Understood.  Thanks.
 3              MS. MCDONALD:  Thank you, Your Honor.
 4              THE COURT:  Anyone else have questions for
 5    Ms. McDonald?  All right.  Thank you very much.  That concludes
 6    the arguments in this particular case.
 7         (Hearing adjourned at 11:55 a.m.)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter. *

*/s/ Bryan A. Wayne*
Bryan A. Wayne

\* PLEASE NOTE:

This hearing was taken via videoconference in compliance with U.S. District Court Standing Order(s) during the COVID-19 pandemic. Transcript accuracy may be affected by limitations associated with use of electronic technology, including but not limited to sound distortion or audiovisual interference.